UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEWART D. BROWN,

                      Plaintiff,

v.                                                      Case No. 19-cv-1761-bhl

DR. KELLY, et al.,

                      Defendants.

## ORDER SCREENING AMENDED COMPLAINT

On October 6, 2020, the Court screened plaintiff Stewart D. Brown's *pro se* complaint filed under 42 U.S.C. §1983, concluded that it failed to state a claim, and ordered him to file an amended complaint by November 5, 2020. (ECF No. 9.) On October 23, 2020, the Court granted Brown's motion to stay this case because, he asserted, he was unable to litigate the case due to an indefinite lockdown at his prison. (ECF No. 12.) Despite the purported lockdown, Brown submitted an amended complaint well in advance of the deadline. (ECF No. 13.) The Court will therefore lift the stay and screen the amended complaint.

### Screening Standard

As explained in the previous order, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the Court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes liberally complaints filed by plaintiffs who are representing themselves. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## Background Allegations

As in his initial complaint, Brown's Amended Complaint alleges mistreatment by prison officials of his injured knee. While he initially named only two defendants (the prison warden and the manager of the prison's health services unit), Brown now identifies eleven individuals he claims are liable to him for alleged constitutional violations related to his knee. He sues Doctor Kelly, Nurse Tracy Thompson, Nurse Anne Reilly, Health Services Manager J. Ludwig, Institution Complaint Examiner K. Schmidt, Nurse J. Sullivan, Captain T. Campbell, Physical Therapist M. Ramirez, Corrections Complaint Examiner Brad Hompe, Office of the Secretary Examiner Cindy O'Donnell, and Laurie Doehling. (ECF No. 13 at 2–3.)

According to the Amended Complaint, in December 2018, while Brown was incarcerated at Dodge Correctional Institution, an unnamed doctor (who is not a defendant) scheduled him for an MRI of his left knee. (ECF No. 13 at 4.) The doctor told Brown that doctors at his transferee institution, Kettle Moraine Correction Institution (KMCI), would follow up. (*Id.*) On January 18, 2019, after his transfer, Brown inquired about his MRI appointment but was told by a nurse (who is not a defendant) that it had been cancelled. (*Id.*) Brown was scheduled to see Dr. Kelly, who did not perform an MRI and instead scheduled Brown for physical therapy with Nurse Ramirez. (*Id.*) Brown continued "complaining of being in constant pain" and was seen by Nurse Thompson, who allegedly refused to send him for an MRI. (*Id.* at 4–5.) Nurse Reilly also

allegedly refused to send Brown to consult with a specialist or receive an MRI, at which point Brown refused further treatment, insisting that he would only be treated by a doctor, not a nurse. (*Id.* at 5.)

Brown alleges he submitted an inmate complaint about the delay in receiving an MRI. (ECF No. 13 at 5.) Schmidt dismissed the complaint after speaking with Health Services Manager Ludwig. (*Id.*) Hompe and O'Donnell denied Brown's appeals of his inmate complaint. (*Id.* at 6.)

Brown further alleges that on December 13, 2019, he was sent to a hospital to see a doctor who finally ordered an MRI on Brown's knee. (ECF No. 13 at 6.) The MRI revealed various injuries in Brown's knee, including a tear in the meniscus. (*Id.* at 6–7.) In late December 2019 or early January 2020, Brown requested a special needs accommodation for "rides" around the institution so he would not have to walk on his injured knee. (*Id.* at 7.) He alleges that the Special Needs Committee—of which Ludwig, Sullivan, Campbell, and Ramirez were members—denied his request. (*Id.*) On January 22, 2020, Brown saw another doctor who confirmed that Brown suffers from severe arthritis in his left knee. (*Id.*)

Based on these allegations, Brown sues the defendants under the Eighth Amendment. (ECF No. 13 at 7.) He seeks injunctive relief ordering the defendants to provide him appropriate medical treatment and compensatory and punitive damages. (*Id.* at 8.)

**Analysis**

As noted in the previous order, the Court reviews Brown's claims about the treatment of his knee issues under the Eighth Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). To state a valid Eighth Amendment claim, Brown must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez*, 792 F.3d at 776 (citing *Farmer*, 511 U.S. at 837).

Brown's Amended Complaint alleges that he suffered from a torn meniscus, which caused him constant pain. These allegations satisfy the objective component of an Eighth Amendment claim. *See Gaston v. Ghosh*, 498 F. App'x 629, 632 (7th Cir. 2012) (concluding that prisoner's allegations of knee injury that caused "severe and excruciating pain" stated serious medical condition for purposes of screening). Whether Brown can maintain claims against the defendants he has named thus depends on whether he has sufficiently alleged that each was deliberately indifferent to his condition.

### 1. Dr. Kelly

Brown alleges that an unidentified doctor at the Dodge Correctional Institute decided to refer him for an MRI, but Brown was transferred to KCMI before the MRI could be conducted and that, when he arrived at the new facility, Dr. Kelly declined to order an MRI and instead sent him for physical therapy. Brown does not allege anything further with respect to Dr. Kelly.

It is not at all clear from Brown's allegations that Dr. Kelly's decision to treat Brown's injured knee with physical therapy was wrong or unreasonable, let alone a violation of Brown's constitutional rights. Nevertheless, at the pleading stage, the Court will allow Brown's claim against Dr. Kelly to go forward. If the record ultimately shows that Dr. Kelly's decision to pursue treatment with physical therapy rather than ordering an MRI was the result of his failure to exercise any professional judgment, Brown might have an Eighth Amendment claim. *See Petties*, 836 F.3d at 729.

### 2. Nurse Thompson and Nurse Reilly

Brown contends that Nurses Thompson and Reilly were deliberately indifferent to his medical needs when they refused to accede to his demands for an MRI. He claims he complained to Nurse Thompson that he was in constant pain, but she refused to let him go for an MRI. He similarly complains that he asked Nurse Reilly for an MRI and for a consultation with a knee specialist, but she refused. As with his claims against Dr. Kelly, Browns' allegations are extremely light in trying to assert Eighth Amendment claims against these nurses. A prisoner does not have a constitutional right to dictate particular diagnostic or treatment techniques. Moreover, a nurse's decision not to adopt an inmate's demanded diagnostic approach does not mean the nurse has been deliberately indifferent to the inmate's rights. In fact, a nurse may have no more authority than an inmate to order a particular test or to refer the patient to a specialist. Typically, a nurse must defer to a physician's orders, and deferring to a doctor's instructions in

most cases would not constitute deliberate indifference. *Berry v. Peterman,* 604 F.3d 435, 443 (7th Cir. 2010). But if the nurses had the authority to order an MRI and failed to exercise professional judgment when denying one, they, like Dr. Kelly, could be found deliberately indifferent. As with the allegations against Dr. Kelly, Brown will need to present evidentiary support to succeed on his claim against Thompson and Reilly.

### 3. HSU Manager Ludwig

Brown makes two allegations against HSU Manager Ludwig. First, he alleges that the Institution Complaint Examiner who dismissed his inmate complaint concerning the delay of his diagnostic medical care spoke to HSU Manager Ludwig before dismissing Brown's claim. Second, he alleges that HSU Manager Ludwig was part of the Special Needs Committee that denied his request for rides around the institution after he had problems with his knee "steadily locking up." Neither allegation is sufficient to state an Eighth Amendment deliberate indifference claim.

Brown does not allege that HSU Manager Ludwig saw him for treatment or provided inaccurate information to Schmidt about his inmate complaint. She cannot be held liable for merely speaking with Schmidt about Brown's inmate complaint; that is part of her job. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (rejecting claim against inmate complaint examiner who "carried out her job exactly as she was supposed to").

Brown's allegation that HSU Manager Ludwig was part of the committee that decided against granting Brown's request for rides around the institution is a closer call. The mere denial of his request for an accommodation—rides around the institution so he did not have to walk—is not enough to support a claim of deliberate indifference. Brown must allege facts suggesting that HSU Manager Ludwig, as a member of the Special Needs Committee, made the decision to deny his request with either bad intent or in a way that substantially deviated from accepted medical standards. But Brown's allegations offer nothing other than that the Special Needs Committee denied his request. He admits he was given a hearing on his request and does not suggest there was anything procedurally improper about the hearing; he simply does not like the result. But the mere fact that the hearing resulted in the denial of the request is not a constitutional violation. *See Acosta v. Barter*, No. 20-C-795, 2020 WL 5057758 at *4–*5 (E.D. Wis. Aug. 27, 2020) (rejecting Eighth Amendment claim based on disagreement with Special Needs Committee's

treatment decision where complaint did not allege denial was a substantial departure from accepted professional judgment).

### 4. Nurse Sullivan and Captain Campbell

Brown's allegations against Nurse Sullivan and Captain Campbell are limited to assertions that they were part of the Special Needs Committee that denied his request for rides so that he would not have to walk around the institution. As discussed above, their participation in a committee that denied Brown's request for an accommodation, without more, is not sufficient to state a claim against them for violating Brown's constitutional rights. *Id.*

### 5. Schmidt, Hompe and O'Donnell

Brown alleges that Schmidt, Hompe, or O'Donnell were all involved at various stages of the grievance process in denying his inmate complaint. There is no inherent constitutional right to a prison grievance system. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). Alleging merely that an institution complaint examiner denied an inmate complaint or appeal does not state a claim against them. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation."). Brown's claims against them are dismissed.

### 6. Physical Therapist Ramirez

Brown makes two allegations against Physical Therapist Ramirez. First, he alleges that Dr. Kelley scheduled him for a physical therapy appointment with Ramirez. Second, he alleges that Ramirez was part of the Special Needs Committee that denied his request for rides around the institution so he would not have to walk with his bad knee. There are no allegations that Ramirez was in any way deliberately indifferent to Brown's knee injury. Accordingly, his claim against Ramirez is dismissed.

### 7. Doehling

Finally, other than naming Doehling as a defendant, Brown's amended complaint contains no other reference to or allegation against Doehling. A complaint that fails to allege any action by a defendant necessarily fails to state a claim for relief against that defendant. *See Twombly*, 550 U.S. at 570; *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003). The Court will dismiss Doehling.

**Motion for Recruitment of Counsel**

Brown also requests that the Court recruit counsel to represent him in this action. (ECF No. 15.) He requests counsel because he cannot afford to hire an attorney, his case involves complex issues (including medical issues) requiring "significant research and investigation," and providing him counsel "would promote justice in that it would balance the scales and promote an atmosphere for the expedient resolution of this matter." (*Id.*) He attached letters from four attorneys or firms who declined to represent him in this matter. (*Id.* at 3–6.)

In a civil case, the Court has the discretion to recruit counsel for individuals unable to afford counsel. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019) (quoting *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the Court must determine that a plaintiff made a good faith effort to hire counsel. *Pickett v. Chicago Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the Court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the Court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. *Pickett*, 930 F.3d at 871. In deciding whether to recruit counsel, the Court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. *Id.* The Court should also consider how well the plaintiff articulated his case to the prospective lawyer. *Id.* Where a plaintiff "conveyed his situation well

and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. *Id.* But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." *Id.*

When considering the second element, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell*, 923 F.3d at 490. The Court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490–491. The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491. In situations where the plaintiff files his motion in the early stages of the case, the Court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." *Pickett*, 930 F.3d at 871.

Brown satisfies the first *Pruitt* element, but he cannot satisfy the second. Brown's pleadings to date show he has a firm grasp of the events alleged and an understanding of his constitutional claims against the defendants. As the case progresses, the legal and factual issues may become too complex for him, his circumstances may change, or he may find himself unable to obtain the information he believes he needs to prove his claims. Should that occur, it may be appropriate to recruit counsel to represent Brown. At this early stage of the proceedings, however, it is impossible to tell whether Brown requires the assistance of counsel to present his case. The Court will deny Brown's request for recruitment of counsel without prejudice.

## Conclusion

The Court **LIFTS** the stay previously entered in this case. (ECF No. 12.)

The Court **DENIES** Brown's request for recruitment of counsel. (ECF No. 15.)

The Court **DISMISSES** defendants K. Schmidt, J. Ludwig, J. Sullivan, T. Campbell, M. Ramirez, Brad Hompe, Cindy O'Donnell, and Laurie Doehling.

Under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on Doctor Kelly and Nurses Tracy Thompson and

Anne Reilly.  Under the informal service agreement, the Court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The Court will send a copy of this order to the officer in charge of the agency where Brown is confined.

The Court **ORDERS** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

The Court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.  Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS.  It will only delay the processing of the matter.

The Court reminds Brown that, if he fails to file documents or take other required actions by the deadlines the Court sets, the Court may dismiss the case based on his failure to diligently pursue it.  The parties must notify the Clerk of Court of any change of address.  Brown is reminded that it is his responsibility to promptly notify the Court if he is released from custody or transferred to a different institution.  Brown's failure to keep the Court advised of his whereabouts may result in the Court dismissing this case without further notice.

Dated at Milwaukee, Wisconsin this 18th day of December, 2020.

BY THE COURT:

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.